**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| DANNY GROOM, | DOCKET NUMBER |
| Appellant, | AT-114M-24-0318-Y-1 |
| v. | |
| DEPARTMENT OF HOMELAND SECURITY, | DATE: May 1, 2026 |
| Agency. | |

# THIS ORDER IS NONPRECEDENTIAL[1]

Jason Mao, Esquire, and Carson Bridges, Esquire, Dallas, Texas,
  for the appellant.

Agatha Swick, Esquire, Springfield, Virginia, for the agency.

Daniel Collado, Esquire, White Plains, New York, for the agency.

Steven J. Lewengrub, Esquire, Atlanta, Georgia, for the agency.

**BEFORE**

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which affirmed his removal. For the reasons discussed below, we GRANT the appellant's

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

petition for review and REMAND the case to the regional office for further adjudication of whether the appellant proved an affirmative defense of retaliation for protected activity under 5 U.S.C. § 2302(b)(9)(C).

## BACKGROUND

Prior to his removal, the appellant was employed as a Transportation Security Officer (Screener) (TSO) at Myrtle Beach International Airport. Initial Appeal File (IAF), Tab 9 at 93. On December 1, 2024, the agency proposed his removal based on charges of inappropriate conduct and providing inaccurate information. *Id.* at 83. The agency alleged that on October 28, 2023, he touched a fellow TSO, referred to as TSO 1, on her "right hip/backend with [his] right hand." *Id.* The agency further alleged that he provided inaccurate information in his written statement about the incident in which he denied touching a coworker. *Id.* The appellant provided a response and a supplemental response to the proposal. *Id.* at 36-59. On January 26, 2024, the agency issued him a notice of removal and removed him, effective that day. *Id.* at 16-33.

The appellant filed an initial appeal with the Board on February 14, 2024. IAF, Tab 1 at 1. The administrative judge held a virtual hearing on October 10, 2024. IAF, Tab 31, Initial Decision (ID) at 1. On November 19, 2024, the administrative judge issued an initial decision in which he affirmed the removal, finding that the agency proved both charges, nexus, and the reasonableness of the penalty, and that the appellant did not prove his affirmative defenses of retaliation for whistleblowing and discrimination based on race, color, sex, religion, and national origin. ID at 1, 3-19. The appellant filed a petition for review in which he claimed that the agency did not prove its charges, that he proved his affirmative defenses, and that the penalty was unreasonable. Petition for Review (PFR) File, Tab 3 at 7-22. The agency submitted a response. PFR File, Tab 5.

**DISCUSSION OF ARGUMENTS ON REVIEW**

<u>The appellant has not shown that the administrative judge erred in finding that the agency proved its charges by preponderant evidence.</u>

The agency charged the appellant with a single specification of inappropriate conduct. IAF, Tab 9 at 17. The agency alleged, "On October 28, 2023, at approximately 1900 hours, while working the Checkpoint on Lane 1, [the appellant] touched [TSO 1's] right hip/backend with [his] right hand." *Id.*

The record contains a 24-second video recording of the incident.[2] IAF, Tab 11-1. The video recording, which has no sound, takes place at an active security lane at Myrtle Beach International Airport. *Id.* It shows the appellant walking past TSO 1, who was on his left side, at 0:05 with a white TSA bowl in his left hand. *Id.* TSO 1 is standing adjacent to the side of the screening device with her right arm resting on top of it throughout the video. *Id.* Although the bowl appears to come close to TSO 1, the video recording is unclear as to whether it contacts her as the appellant walks by her. *Id.* TSO 1 has no visible reaction to the appellant walking past her the first time. *Id.* He then deposits the bowl on top of the end of the screening device at 0:07, turns around, and walks past TSO 1, who is now on his right side, a second time at 0:11. *Id.* As he walks past TSO 1 the second time, the appellant's right hand is below his waist and extended away from his body at an approximately 45-degree angle and appears to grab TSO 1's body at 0:11. *Id.* TSO 1 turns her head to the left towards the appellant and away from the video camera, two seconds later, at 0:13. *Id.*

At the hearing, the appellant testified that he was performing a "hand over" maneuver around TSO 1's hip area, referring to an instance in which one individual touches or places a hand near another while passing by them in close quarters to help guide the interaction. ID at 6-7 (citing hearing testimony of the appellant).

---

[2] The administrative judge provided a detailed second-by-second analysis of the video. ID at 4-6.

He explained that he would employ this maneuver to ensure no physical contact when he was in close quarters with coworkers. ID at 7.

The administrative judge concluded that the agency proved that it is more likely than not that the appellant touched TSO 1's buttock. *Id.* First, he credited TSO 1's testimony about the appellant touching her buttock and that the appellant had previously told her that her body was like a "milkshake." *Id.* The administrative judge concluded that the appellant was sexually attracted to TSO 1. *Id.* Second, the administrative judge determined that the video recording corroborated TSO 1's testimony that he touched her right buttock. ID at 7-8. The administrative judge noted that the appellant lowered his right shoulder and extended his right arm at a 45-degree angle before touching TSO 1. ID at 8. Third, the administrative judge considered the appellant's written statement and hearing testimony to be internally inconsistent. *Id.* Although his written statement indicated he does not touch coworkers, his hearing testimony insinuated that touching workers is somewhat common. *Id.* (citing hearing testimony of the appellant); IAF, Tab 9 at 67. Furthermore, the administrative judge found the appellant's "hand over" explanation to be tailored to what he saw in the video. ID at 8. He found this explanation not credible, reasoning that if one were to perform a hand over to avoid touching someone, one would do so at shoulder height, not at hip level. *Id.* Finally, the administrative judge determined that TSO 1 directed comments to the appellant in a subdued conversational tone after the touching, which is why no one claimed to have overheard them. ID at 9. Based on these factors, the administrative judge concluded that the appellant intentionally touched TSO 1's buttock. *Id.*

On petition for review, the appellant alleges that the administrative judge omitted significant parts of TSO 1's testimony and that the administrative judge's discussion of the video recording omitted material facts. PFR File, Tab 3 at 7-16. The Board may grant a petition for review if the initial decision contains an erroneous finding of material fact. *E.g.*, *West v. Department of Health and Human*

*Services*, 122 M.S.P.R. 434, ¶ 1 (2015). Material means that the factual error must be of sufficient weight to warrant an outcome different from that of the initial decision. *Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 36 (2016) (citing 5 C.F.R. § 1201.115(a)(1)).

First, the appellant asserts that the administrative judge omitted material parts of TSO 1's testimony in the initial decision. Specifically, he alleges that the administrative judge should have mentioned Transportation Security Manager (TSM) Felicies's November 7, 2023 report that TSO 1 told her that the appellant smacked her on the buttock in passing. PFR File, Tab 3 at 7 (citing IAF, Tab 9 at 65). Next, he alleges that the administrative judge should have mentioned TSO 1's November 7, 2023 report that something brushed up against her during the appellant's initial pass, and he smacked her on the backend with one of the TSA bowls on the way back. *Id.* (citing IAF, Tab 9 at 63). In addition, he claims that the administrative judge should have mentioned TSO 1's November 11, 2023 police report in which she claimed that the appellant used the TSA bowl to smack her in the buttock and that he told her that it was an accident. *Id.* at 7-8 (citing IAF, Tab 23 at 54).

The appellant alleged that the absence of these facts were erroneous findings of material fact. *Id.* at 7. However, he has not established that the absence of these facts was material. The video evidence confirms that the appellant did not smack TSO 1 on the buttock as indicated in TSM Felicies's and TSO 1's November 7, 2023 reports. IAF, Tab 11-1 at 0:11. However, these reports were taken before either of them had viewed the video recording. Indeed, when the appellant questioned TSO 1 at the hearing on the accuracy of her November 7, 2023 report, she testified that it was accurate at the moment that she wrote it. IAF, Tab 27-1 at 47:13-47:21. We find it more likely than not that this testimony reflected the fact that she had not yet seen the video and her statements were based only on her sense of touch because she was facing away from the appellant when the incident occurred. We conclude that the administrative judge's inclusion of these additional

facts would not have warranted a different outcome. Therefore, we find that they were not material. *See Elder*, 124 M.S.P.R. 12, ¶ 36.

Next, the appellant alleges that the administrative judge's description of the video recording omitted several material facts or was otherwise inaccurate. PFR File, Tab 3 at 10-16. First, he alleges that the administrative judge erred by not noting that he did not touch TSO 1, and TSO 1 did not react as if she had been touched, when he first passed by her. *Id.* at 11. Second, he alleges that the administrative judge erred by saying there were almost two full rows of floor tiles between the appellant's left foot and the nearest wall to his left when he walked past TSO 1 the second time. *Id.* (citing ID at 5). According to the appellant, this statement was an error because the administrative judge neglected to mention that the first three rows of tiles closest to the wall were about half as wide as those adjacent to them, which gave the impression that the area was not narrow. *Id.* Third, the appellant alleges that the administrative judge erred by describing his hand at the 0:11 mark of the video recording as appearing to be "cupped and open towards TSO 1's right buttock area." *Id.* (quoting ID at 6). The appellant claims that the video recording did not have sufficient resolution to determine the curvature of his hand and the camera's fisheye lens makes judging distance difficult. *Id.* at 11-12. Fourth, the appellant states that his hand touched TSO 1's waist, not her buttock. *Id.* at 12.

We find that none of these arguments raises an erroneous finding of material fact. It is undisputed that the alleged touching in the inappropriate conduct charge refers to the appellant's second time passing TSO 1. The relative width of the tiles closest to the wall as compared to those adjacent to them had no bearing on whether his right hand reached out to touch TSO 1 on his second pass. Likewise, the shape of the appellant's right hand when he touched TSO 1 is immaterial to whether he touched her. The agency only needed to prove that he touched TSO 1's right hip or backend. *See Cross v. Department of the Army*, 89 M.S.P.R. 62, ¶ 8 (2001) (holding that an agency may use a broad label, such as "improper conduct," that has

no legal definition to charge an employee with misconduct as long as the reasons for the proposed action are described in sufficient detail to allow the employee to make an informed reply). As to his claim that he touched TSO 1's waist, not her buttock, our review of the video evidence supports the administrative judge's finding on this issue. Thus, we find that the appellant has not identified an erroneous finding of material fact as to the inappropriate conduct charge, and we discern no reason to disturb the administrative judge's findings on it.

<u>The administrative judge must consider whether the appellant has established that his removal constituted unlawful reprisal for engaging in activity protected under 5 U.S.C. § 2302(b)(9)(C).</u>

As previously mentioned, the appellant's petition for review also challenges the administrative judge's findings concerning his claim of discrimination, his claim of reprisal, and the reasonableness of the agency's penalty. While we have considered all these arguments, we find no reason to disturb the administrative judge's well-reasoned findings, with one exception.

Among his reprisal claims, the appellant alleged that the agency retaliated against him due to his having filed or participated with an anti-harassment program incident report on November 2, 2023, which was only days before TSO 1 came forward with her allegations. PFR File, Tab 3 at 16-17 (citing IAF, Tab 23 at 81). This anti-harassment incident report included an assertion that TSM Felicies "treated him like a criminal" and TSO 2 made false allegations against him. IAF, Tab 23 at 81.[3] The report was filed by TSM Strickland, who would propose the appellant's removal less than a month later. *Id.* at 82; IAF, Tab 9 at 83. The appellant also seems to suggest that TSM Felicies was aware of the same. IAF, Tab 30 at 9.

In the initial decision, the administrative judge considered this report and the appellant's other complaints of harassment under 5 U.S.C. § 2302(b)(8), finding

---

[3] TSO 2 was also a coworker to the appellant. By all indications, the appellant and TSO 2 filed numerous competing complaints about each other during the months preceding the complaint by TSO 1. *E.g.*, IAF, Tab 23 at 36, 38, 57-61, 67, 74.

that none of the appellant's complaints constituted protected whistleblowing disclosures. ID at 12-14. On that point, we agree. However, we find that the administrative judge should have further considered whether the appellant's activity in connection with the anti-harassment program was protected under section 2302(b)(9)(C).

Section 2302(b)(9)(C) makes it a prohibited personnel practice to take a personnel action against an employee in reprisal for "cooperating with or disclosing information to the Inspector General (or any other component responsible for internal investigation or review) of an agency, or the Special Counsel, in accordance with applicable provisions of law." *Reese v. Department of the Navy*, 2025 MSPB 1, ¶ 36. The Board has held that the "other component responsible for internal investigation or review" refers to an entity that has a degree of independence and objectivity as well as the authority to investigate or review by taking testimony, collecting evidence, and making findings and recommendations. *Id.*, ¶ 50.

Under the circumstances before us, we find that remand is required for the administrative judge to address the facts at hand as they relate to section 2302(b)(9)(C). *See Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests). The administrative judge should afford the parties an opportunity to present additional argument and evidence about whether the appellant engaged in activity protected by section 2302(b)(9)(C) and, if so, whether this was a contributing factor in his removal. If the appellant proves these elements by preponderant evidence, the administrative judge must decide whether the agency has met its heightened burden of proving by clear and convincing evidence that it would have taken the same removal action in the absence of the protected activity. To the extent that it is

appropriate, the administrative judge may adopt his original findings on the merits of the charges, nexus, penalty, and the appellant's remaining affirmative defenses. However, if any of the evidence and argument developed on remand causes the administrative judge to reassess his previous findings, he should explain that in his remand initial decision.

## ORDER

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:    _____
                  Gina K. Grippando
                  Clerk of the Board

Washington, D.C.